**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION**

**SERGIO PESQUEIRA,**

**Plaintiff,**

**vs. Case No. 5:25CV144-MAF**

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

**Defendant.**
**_______________________________/**

# MEMORANDUM OPINION AND ORDER

This Social Security case was referred to the undersigned upon consent of the parties, ECF No. 21, by Chief United States District Judge Allen C. Winsor. ECF No. 22. This cause is before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (Commissioner) denying in part Plaintiff's application for Period of Disability and Disability Insurance Benefits (DIB) and for supplemental security income (SSI). After consideration of the record, for the reasons stated below, the decision of the Commissioner is AFFIRMED.

## I. Procedural History

Plaintiff has been pursuing his claim for disability since at least June 14, 2000. Tr. 158.[1] That initial application sought DIB benefits with an onset date of January 1, 1999, and resulted in a finding that Plaintiff had a closed period of disability from March 1, 2001, through March 1, 2002. Tr. 158-163. Plaintiff then filed an application for SSI and DIB benefits on November 26, 2008, alleging an onset date of March 1, 2001. Tr. 234. The administrative decision dated February 11, 2011, ultimately denied Plaintiff's claim but did acknowledge the prior period of disability (March 1, 2001-March 1, 2002). Tr. 235-242. Plaintiff did not appeal these prior administrative decisions, and, as recognized below, there is no good cause to reopen them. Tr. 18.

In May 2015, Plaintiff protectively filed an application for a period of disability and disability insurance benefits (DIB) and Supplemental Security Income (SSI), alleging disability beginning January 1, 1999. Tr. 577-97; 607-08. The agency denied the claim initially and on reconsideration. Tr. 165-81; 183-99; 201-14; 216-29. After a hearing held in January 2018 (Tr. 32-50), Administrative Law Judge (ALJ) Ben Willner issued a decision in March 2018, finding Plaintiff not disabled. Tr. 247-63. Subsequently, the Appeals

[1] References to the record in this case will be to "Tr." followed by the relevant page number.

Council granted Plaintiff's request for review and remanded the case to an ALJ. Tr. 270-72.

ALJ Thomas D. Businger held a hearing in July 2021 (Tr. 93-126) and issued a decision on September 29, 2021, finding Plaintiff was not disabled. Tr. 277-303. On November 22, 2022, the Appeals Council granted Plaintiff's request for review and remanded the case to an ALJ. Tr. 312-14. Subsequently, ALJ Basinger held a hearing on November 28, 2023 (Tr. 47-92), and issued a partially favorable decision on July 6, 2024, finding that Plaintiff was not disabled for purposes of DIB benefits prior to June 30, 2006, the last date insured under that program, and that he was disabled for purposes of the SSI program, but only beginning on September 23, 2021. Tr. 17-36. The Appeals Council denied Plaintiff's request for review. Tr. 6-8; 574-76. Accordingly, the Commissioner's final decision is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff filed his *pro se* complaint with this Court on June 13, 2025. ECF No. 1. The Commissioner filed the administrative record on August 15, 2025. ECF No. 9. Plaintiff filed a Memorandum in Support of his Complaint on December 30, 2025. ECF No. 18. The Commissioner filed a responsive memorandum in support of the Commissioner's position on January 29, 2026. ECF No. 20. This matter is ripe for review.

## II. Issue Presented

In his Complaint and Memorandum in Support, Plaintiff raises the following issues:

1. Whether substantial evidence supported ALJ Businger's conclusion that Plaintiff was not disabled despite the existence of severe and non-severe conditions which impaired his ability to perform some work.

2. Whether ALJ Businger erred in failing to reopen Plaintiff's prior disability claims.

ECF No. 18, pp. 2-5. As these are the only issue presented, the Court will limit its review of ALJ Businger's decision and record to these matters.

## III. Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). Affirmance is required if the decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." Bloodsworth, 703 F.2d at 1239; accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[2]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). It is an "inability to engage in any substantial gainful

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002).

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairments?
3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?
4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

---

[3] An RFC is the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '*residual functional capacity assessment'* describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered his decision. See generally, Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

Page 7 of 40

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating he cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. As the finder of fact,

pursuant to 20 C.F.R. §§ 404.1502(a) and 404.1513(a)(2), the ALJ considers medical opinions from licensed physicians and psychologists and acceptable medical sources. The ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might appear. 20 C.F.R. § 404.1527.

## IV. ALJ Businger's Findings

ALJ Businger properly articulated and followed the five-step sequential evaluation process for determining disability. See 20 CFR § 416.1520(a). In doing so, ALJ Businger made the following findings (finding in bold):

**1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2006.**

This finding is undisputed. Tr. 22-23.

**2. The claimant has not engaged in substantial gainful activity since January 1, 1999, the alleged onset date (20 CFR 404.1571 *et. seq.* and 416.971 *et. seq*).**

This finding is undisputed. Tr. 23. While Plaintiff reported income after the alleged onset date, that income did not rise to the level of substantial gainful activity or it occurred during a previously adjudicated period.

**3. Since the alleged onset date of disability, January 1, 1999, the claimant has had the following severe impairments: degenerative disease of the right ankle, status post fractures; alcohol use disorder; bipolar disorder; mood disorder; and antisocial personality disorder (20 CFR 404.1520(c) and 416.920 (c).**

This finding is undisputed. Tr. 23-24. Plaintiff has medically determinable impairments that significantly limit his ability to perform basic work activities as required by SSR 85-28.

**4. Since January 1, 1999, the claimant has not had an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

This finding is disputed. Tr. 24-26. Ultimately, ALJ Businger concluded that the record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment.

With respect to Listing 1.17, ALJ Businger concluded that there was no significant objective evidence that Plaintiff had reconstructive surgery or surgical arthrodesis of a major weight bearing joint that was documented by (a) a history of such surgery or surgical arthrodesis, (b) impairment-related physical limitation of musculoskeletal functioning that has lasted or is expected to last for a continuous period of 12 months, and (c) a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands. Tr. 24

Similarly, when discussing Listing 1.18, ALJ Businger concluded that the was no significant objective evidence that Plaintiff has an abnormality of

a major joint in any extremity documented by (a) chronic joint pain or stiffness, (b) abnormal motion, instability, or immobility of the affected joint, (c) anatomical abnormality of the affected joint noted on physical examination or imaging, and (d) impairment-related physical limitation of musculoskeletal functioning that has lasted or is expected to last for a continuous twelve months and medical documentation of the need for an assistive device. Tr. 24.

ALJ Businger also concluded that Plaintiff's mental impairments, both individually and collectively, did not meet or medically equal the criteria of Listing 12.04 and 12.08. Tr. 24-25. ALJ Businger concluded that Plaintiff had a moderate limitation on the established onset date with respect to understanding, remembering, or applying information. While Plaintiff alleged that he had difficulty remembering, understanding, following instructions, completing tasks, and going places or remembering to take medications without reminders, ALJ Businger recounted how Plaintiff could put his dirty clothes in in the laundry, could take public transportation, shop, read and watch television. He was also able to provide information about his health, describe his work history, follow instructions from health care providers, comply with treatment directions and respond to questions from providers. There was no mention of any issues with Plaintiff's long or short-term

Page 11 of 40

memory. Tr. 25; 49-78; 684-86; 776; 779; 781; 787; 789-90; 941.

Similarly, with respect to interacting with others, ALJ Businger concluded that Plaintiff was only moderately limited. While Plaintiff contended that he had difficulty engaging in social activities, getting along with others, and dealing with authority, ALJ Businger found that Plaintiff was able to shop in stores for hours at a time, take public transportation, maintain relationships and live with others. Plaintiff was also able to participate in the hearing and to establish rapport with his providers. Id.

ALJ Businger also concluded that Plaintiff was only mildly limited when it came to concentrating, persisting and maintaining pace. Again, Plaintiff alleged that he had limitations in concentrating, focusing, completing tasks and avoiding distractions, but ALJ Businger found that he was able to read, watch television, use the internet and handle his own medical care, and his medical record did not demonstrate any inability to complete testing or issues with concentration or attention. Id.

Finally, ALJ Businger found that Plaintiff was only mildly limited in adapting and managing oneself. Plaintiff alleged he had difficulties handling stress or changes in his routine, dressing and bathing. However, Plaintiff was able to get along with caregivers, and was always groomed and hygienic. Id.

In addition to finding that Plaintiff did not satisfy the Paragraph "B" criteria because he did not have two "marked" limitations or one "extreme" limitation, ALJ Businger also concluded that Plaintiff did not satisfy the Paragraph "C" criteria. Plaintiff had no documented history of a mental health impairment of at least 2 years' duration that caused more than a minimal limitation of his ability to work. There was also no evidence of repeated episodes of decompensation, and no significant evidence of a residual disease process that has resulted in even a minimal increase in mental demands or change in the environment.

**5. After careful consideration of the entire record, the undersigned finds that since January 1, 1999, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift and/or carry ten pounds occasionally and less than ten pounds frequently; he can stand and/or walk for a total of two hours in an eight-hour workday; he can sit for a total of six hours in an eight-hour workday. In addition, the claimant can never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, and crawl; and occasionally use foot controls with the right lower extremity. Moreover, the claimant needs a cane to ambulate. Finally, the claimant is limited to simple, repetitive tasks; and he can have frequent contact with the public, coworkers, and supervisors.**

This finding is disputed. Tr. 26—33.

ALJ Businger details in his order how he followed the two-step process to determine whether (1) Plaintiff had an underlying medically determinable physical or mental condition that could reasonably be expected to cause the

Plaintiff's pain or other symptoms, and (2) whether the objective medical evidence or other evidence supported Plaintiff's assertion that his symptoms limited his ability to do work-related activities.

After detailing Plaintiff's subjective complaints and symptoms (Tr. 26-27), ALJ Businger ultimately concluded that Plaintiff's medically determinable impairments could be expected to cause those alleged symptoms. However, ALJ Businger went on to find that Plaintiff's statements concerning the intensity, persistence and limiting effects of those alleged symptoms were not supported by the evidence. Tr. 27.

According to ALJ Businger, the medical evidence demonstrated a fairly conservative treatment history and generally benign objective medical findings, and demonstrated activities of daily living. ALJ Businger found that while Plaintiff was likely to have limitations resulting from degenerative disease of the right ankle, the evidence did not confirm that it was disabling prior to his 50th birthday.

ALJ Businger reviewed and summarized Plaintiff's medical records as part of his consideration of this matter. Tr. 27-33. Plaintiff sustained a major fracture to his right ankle when he fell from some scaffolding in 1998. He was taken to the hospital and had several surgeries – including an open reduction, internal fixation and grafting. Tr. 778-79. By September 2015,

Plaintiff's x-rays confirmed mild to moderate degenerative changes with previous fractures that were well healed. TR. 792. Thereafter, by March 30, 2021, imaging revealed an old, healed right distal tibial diaphysis and metaphysis fracture with minimal ventral angular deforming, old distal fibular diaphysis fracture with mild ventral deformity, and ossification across the syndesmosis, but no acute fracture or dislocation; further imaging showed mild to moderate post-traumatic osteoarthritis of the right ankle joint and a tiny right plantar calcaneal bone spur. Tr. 1426.

By December 2021, radiographs of the Plaintiff's ankle showed old healed fractures of the distal tibial and fibular meta diaphysis, redemonstration of overall mild posttraumatic osteoarthritis of the ankle mortise joint, previous screw track site orthopedic hardware in the distal tibia without retained orthopedic hardware, and heterotopic ossification of the distal tibiofibular syndesmosis related to the sequela of his old injury, but no interval change since the prior examination in March 2021, and no acute fracture, no joint malalignment and no acute osseous abnormality. Tr. 1199. According to ALJ Businger, there was no other significant objective testing regarding Plaintiff's right lower extremity. Tr. 28.

ALJ Businger also meticulously reviewed the records relating to Plaintiff's physical examinations, finding that such examinations were within

Page 15 of 40

normal limits with no significant positive findings relating to Plaintiff's lower extremities. Tr. 821; 842; 859. As of July 15, 2015, Bahaa Girgis, M.D., noted Plaintiff's gait was unsteady and unpredictable, and Plaintiff required a cane or crutches to walk; that Plaintiff required maximum assistance getting on and off the examination table; but that Plaintiff walks and moves easily. Dr. Girgis noted there was a reduced range of motion of the right ankle, but was within normal limits, with no tenderness or swelling of the right ankle, with good strength, sensation, and reflexes in the lower extremities. Plaintiff also reported he was only taking ibuprofen for treatment. Tr. 778-86.

ALJ Businger notes that Plaintiff's other physical examinations over the years have yielded similar results. Tr. 28-29. His October 30, 2018, exam revealed decreased range of motion, but there was no swelling, inflammation or tenderness, and Plaintiff had a normal gait. Tr. 1635. On March 25, 2019, Plaintiff presented to the Bureau of Prisons Health Services requesting special shoes due to pain in his lower extremities, but upon exam he had a bunion and ingrown toenails with no other positive findings regarding his right lower extremity. Tr. 1565. On March 24, 2021, Plaintiff had a swollen right ankle, but it was mild and there was no sign of acute gout flare. Tr. 878. On December 21, 2021, while complaining about gout flare ups, Plaintiff

requested an ankle brace because his right ankle hurt "real bad." Tr. 1275. On December 27, 2021, Plaintiff complained of a gout flare-up in his right ankle, and his right ankle was swollen, tender and warm to touch. Tr. 1272-73. On May 13, 2022, Plaintiff complained of five gout flare ups in three months and stated he was "back to using his cane" (suggesting he wasn't regularly using it) because of ankle pain after his last flare up.

By June 2023, while Plaintiff was incarcerated, he complained about right ankle pain and right elbow pain, but reported his pain was at baseline and was managed with ibuprofen. While he reported he was issued a cane, that cane had been confiscated because he used it as a weapon during an altercation. Tr. 1099. His request for a new cane was denied, at least in part because he demonstrated steady gait on the date of the examination. Tr. 1100. On September 6, 2023, Plaintiff again presented with complaints regarding his right ankle, stating that he was treating his pain with ibuprofen. On physical exam he had no cyanosis, full and normal range of motion, no gross deformity, and he was having no pain. Tr. 955; 1087.

ALJ Businger also relied on treatment notes, including Plaintiff's own statements, to undermine his claims of disability. Plaintiff injured his elbow in April 2017 while working as a bouncer at a bar breaking up a fight. Tr. 841. While incarcerated in the Bureau of Prisons between March 12, 2019, and

March 24, 2021, Plaintiff's complaints and significant treatment did not relate to his right ankle injury/surgery. In fact, he was cleared for food service work without restriction in March 2021. Tr. 889-90. Further, as demonstrated by the records from Plaintiff's emergency room visits, none of them related to Plaintiff's right lower extremity. Tr. 819-71. Additionally, during his time in prison, he was often noted to have a normal gait. Tr. 1086-1663. ALJ Businger ultimately concluded that Plaintiff's degenerative disease of his right ankle was accounted for in the RFC he developed. Tr. 29.

ALJ Businger also addressed Plaintiff's mental health impairments. While recognizing that such impairments may cause limitations, ALJ Businger did not believe Plaintiff's limitations were disabling prior to age 50. Id. Plaintiff has alcohol use disorder, bipolar disorder, mood disorder, and an antisocial personality, but there was no record of treatment for such conditions. Plaintiff denied a history of substance abuse and violence during his intake evaluation for prison. Tr. 818. But his record is replete with examples of such issues. He reported in August 2009 and in December 2010 that he began abusing alcohol at the age of 17, and, as a result, would beat women up. Tr. 797. He reported other violent assaults, offenses and domestic violence. Tr. 796-98; 817-18.

Plaintiff's treatment notes indicate that while Plaintiff alleged increased paranoia and "episodes" in late 2015, those incidents coincided with Plaintiff's inquiries into SSI coverage. Tr. 815. At that same time he presented as alert and oriented with euthymic mood and congruent effect; he appeared stable; was alert, calm, pleasant, oriented, and cooperative; exhibited normal speech, linear and coherent thoughts, intact focus, insight and judgment; and denied hallucinations or delusions. Tr. 815-16.

ALJ Businger concedes that Plaintiff had issues. He was diagnosed as bipolar and with alcohol disorder (Tr. 796; 816); he was arrogant and cocky (Tr. 815); he was irritable and impatient; depressed, angry, anxious and easily frustrated; paranoid with feelings that people were setting him up for failure (Tr. 789-90; 795); he had down moods, impaired energy and appetite, suicidal and self-harm thoughts and homicidal or other harm thoughts. Tr. 1096. However, Plaintiff's mental examinations were grossly within normal limits. Tr. 30. He demonstrated largely appropriate mental health status and behavior. Tr. 787-91. He was cooperative, maintained good eye contact, established rapport, and exhibited normal psychomotor activity, speech, thought processes and content (Tr. 788); he exhibited no evidence of delusions, hallucinations, illusions, obsessions, ideation, compulsions or paranoia (Id.); he was alert and oriented, remembered three

out of three items immediately after five minutes, and performed serial sevens and serial threes; was able to spell the word "world" backward and forward, identify similarities between objects, and analyze the meaning of simple proverbs (Tr. 789); he demonstrated intact fund of knowledge, common sense understandings, and responded appropriately to hypotheticals requiring social judgment and knowledge of social norms. Tr. 590. Plaintiff had normal mental state examinations throughout his incarceration during the period at issue and from Riverside Community Hospital. Tr. 819-71; 877-948; 1086; 1093; 1111; 1117; 1122; 1321; 1457; 1572; 1578; 1640.

Plaintiff did not have significant or consistent treatment for any mental health impairment. Tr. 30. He had no inpatient or outpatient treatment other than treatment he received while incarcerated. Those treatments related to suicidal threats – jumping from the third floor of the prison, threatening to cut himself with a razor, and threatening to shoot himself. Id. He also refused treatment and medications, contending that he did not believe such things made a difference. Tr. 791. Plaintiff did receive therapy from July 2105 through October 2015 (Tr. 794-95; 815-16), but no significant psychiatric treatment or complaints were received from Plaintiff, and he presented as awake and alert, with normal mood and no altered consciousness. Tr. 821.

He did receive mental health care while an inpatient at Loma Linda University Health Center, but was stabilized and discharged within a few days. 958-1057. ALJ Businger ultimately concluded that Plaintiff's mental health impairments were accounted for by Plaintiff's RFC's limitation to simple, repetitive tasks and allowing for frequent contact with the public, coworkers and supervisors. Tr. 31.

ALJ Businger reviewed the medical opinions and prior administrative medical findings and concluded that the prior administrative medical findings and opinions were not entitled to any specific evidentiary weight, including controlling weight. He summarized that review as follows. Tr. 31-32.

> A.S. Wong, M.D. – opined that there was insufficient evidence of both Title 2 and Title 16 disability. Tr. 206-207; 221-22. ALJ Businger agreed that those findings were consistent with the records available to Dr. Wong at the time; updated records at the time of hearing were sufficient to support the Title 16 claim. ALJ Businger assigned these prior administrative medical findings substantial weight. Tr. 31.
>
> L. Naiman, M.D. – Dr. Naiman also opined that there was insufficient evidence of Title 2 disability, but did find there was evidence of a Title 16 impairment which limited Plaintiff to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; stand and/or walk for two hours in an eight hour workday; sit for "about" six hours in an eight hour workday; occasionally climb ramps or stairs, balance, kneel, crouch or crawl; never climb ladders, ropes, or scaffolds; and avoid concentrated exposures to extreme cold, vibrations, and hazards. Tr. 176-77; 181; 189; 195; 199. ALJ Businger concluded that Dr. Naiman's opinion was supported by the evidence and consistent with the greater record in that it demonstrated Plaintiff continued to have complaints of pain about his right ankle. However, ALJ Businger did not feel that the opinion addressed the need for an assistive device and was

insufficiently restrictive regarding Plaintiff's ability to lift and/or carry items. Tr. 31. ALJ Businger assigned these prior administrative medical findings substantial weight. Id.

Bahaa Girgis, M.D. – Dr. Girgis opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk less than two hours with frequent stops of ten minutes per hour; could sit for six hours; and could never climb, stoop, kneel, crouch or crawl. Tr. 778-85. ALJ Businger felt this opinion was supported by Dr. Girgis' familiarity with Social Security disability rules, laws, and regulations, as well as his in person examination; however, ALJ Businger did not feel the opinion was consistent with the greater record, including subsequent evidence, as it was insufficiently restrictive in terms of what Plaintiff could lift or carry whilst excessively restrictive in terms of the need for frequent stops and never being able to climb, stoop, kneel, crouch or crawl. Tr. 31. ALJ Businger notes that Plaintiff's gait was often noted to be normal (Tr. 971; 990; 992; 998). ALJ Businger assigned some weight to Dr. Girgis' opinion.

V. Gomez, M.D. – Dr. Gomez opined that Plaintiff is unable to walk 100 yards without assistance, and uses a wheelchair due to chronic right ankle pain. Tr. 768. ALJ Businger assigned some weight to this opinion as it was supported by Dr. Gomez's treating relationship with the Plaintiff and is somewhat consistent with the greater record which demonstrates that Plaintiff needs a cane for ambulation, but the opinion does not contain a function-by-function analysis. Tr. 32.

Jeff Hansen, M.D. – Dr. Hasan opined that Plaintiff may have met listing 1.18 as of June 2006 (Tr. 59-70), but ALJ Businger found that opinion was based on conjecture and is not consistent with objective medical evidence. Because Dr. Hasan opined consistent with the whole record that Plaintiff could perform less than full range of sedentary work, but because of Plaintiff's often-normal gait, Dr. Hasan's opinion was given partial weight. Id.

David Peterson, Ph D. – Dr. Peterson opined that Plaintiff's impairments, including his alcohol use, met the criteria for listings 12.04 and 12.08 because Plaintiff becomes angry, violent, paranoid and abusive when under the influence of alcohol. While ALJ Businger

believed that opinion was supported by and consistent with the evidence (Tr. 794; 796-97; 814-818), the evidence did not support a finding that Plaintiff had an extreme limitation in one – or marked limitations in two – areas of mental functioning. Tr. 32. ALJ Businger gave little weight to that opinion. Id.

Patricia Heldman, M.D. and Michelle Butler, PsyD. – consistent with the lack of evidence prior to June 2006, both doctors found there was insufficient evidence for the Title 2 claim. With respect to the Title 16 claim, both doctors concluded that Plaintiff would have difficulty maintaining ideal levels of concentration, accuracy, patience, dependability, and productivity. Tr. 208-12; 223-27. ALJ Businger found that their opinions were supported by their specialties, by their familiarity with Social Security programs and evidentiary requirements, and because of their consistency with each other and with the greater record. Tr. 32. Plaintiff does have some moderate limitations based on his mental health conditions. ALJ Businger gave these opinions substantial weight. Id.

Nenita Belen, M.D. – Dr. Belen opined that Plaintiff had a marked limitation in maintaining social functioning, but mild limitations in the other areas of mental health functioning. Id. ALJ Businger found that Dr. Belen's finding a marked limitation was not supported by Dr. Belen's own examination or the greater record. Id. Further, ALJ Businger concluded that the mild limitations were insufficiently restrictive and inconsistent with the testimony of Dr. Peterson. Tr. 33. ALJ Businger gave little weight to Dr. Belen's opinion. Tr. 32.

In addition to the medical and mental health opinions detailed above, the record also contained a report from Brenda Pesqueira, Plaintiff's wife. While her report generally supported Plaintiff's complaints, and had to be considered to show the severity of Plaintiff's impairments and how his impairments impact his ability to function, ALJ Businger gave the opinion little weight because it was a lay opinion based on casual observation by a lay

person subject to family loyalty, as opposed to an opinion based on objective medical observation and testing. The accumulated medical evidence outweighed Mrs. Pesqueira's potentially biased lay opinion. Tr. 33.

Ultimately, ALJ Businger concluded that his proposed RFC was supported by Plaintiff's own subjective allegations, his reported activities of daily living, the opinions of Dr. Girgis and Dr. Gomez, the prior administrative findings, Plaintiff's routine and conservative treatment, the objective evidence, and the record as a whole. Id.

**6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965.** This finding is undisputed. Tr. 33

**7. Prior to the established disability onset date, claimant was a younger individual age 18-44. On September 23, 2021, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).** This finding is undisputed. Id.

**8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).** This fact is undisputed. Id.

**9. Transferability of job skills is not an issue in this case because claimant does not have past relevant work (20 CFR 404.1568 and 416.968).** This fact is undisputed. Id.

**10. Prior to September 23, 2021, the date the claimant's age category changed, considering the claimant's age, education, work experience, a residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969 and 416969a).**

This fact is disputed. ECF 18, pp. 3-4.

Page 24 of 40

Prior to September 23, 2021, ALJ Businger concluded that Plaintiff's ability to perform sedentary work was impeded by limitations from his impairments. Tr. 34. To account for the limitations imposed by the RFC, ALJ Businger asked the vocational expert (VE), Shirley Ripp, whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience and RFC. The VE testified given the factors, the following representative occupations existed in the national economy:

| Position | DOT No. | Rating | Activity | Jobs available |
|---|---|---|---|---|
| Document Preparer | 249.587-018 | SVP 2 | Sedentary | 15,628 |
| Addressing Clerk | 209.587-010 | SVP 2 | Sedentary | 2,065 |
| Telephone Solicitor | 299-357-014 | SVP 2[4] | Sedentary | 36,000 |

ALJ Businger found the VE testimony consistent with the Dictionary of Occupational Titles, or to be based on the VE's experience in vocational rehabilitation. Tr. 34. Based on that testimony, ALJ Businger found that Plaintiff could make a successful adjustment to other work that existed in the national economy prior to September 23, 2021. Thus, Plaintiff was not disabled.

---

[4] This position was classified as an unskilled (SV2) position by the VE based on how it is typically performed half the time.

**11. Beginning on September 23, 2021, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

ALJ Businger found that beginning on September 23, 2021, Plaintiff's age category changed and, based on his age, education, and work experience, Plaintiff was disabled by direct application of the medical-vocational rule 201.12. This finding is undisputed. Tr. 35.

**12. The claimant was not disabled prior to September 23, 2021, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

Plaintiff contends he was disabled prior to September 23, 2021. Neither party disputes that Plaintiff was disabled after that date. Id.

**13. The claimant was not under a disability within the meaning of the Social Security Act at any time through June 30, 2006, the date last insured (20 CFR 404.315(a) and 404.320(b).**

Plaintiff disputes this finding. Tr. 35

**14. The claimant's substance use disorder is not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).**

This finding is undisputed. Tr. 35. ALJ Businger determined that it was impossible to separate the mental restrictions of drug addiction and alcoholism from the restrictions associated with Plaintiff's other mental impairments, and that Plaintiff would still be disabled in the absence of a

substance use disorder. Plaintiff's alcohol use disorder was not a contributing factor in determining whether Plaintiff was disabled. Tr. 35

Ultimately, ALJ Businger determined that Plaintiff was not disabled through June 30, 2006, the date last insured. Id. Plaintiff's DIB claim should therefore be denied. With respect to his SSI claim, ALJ Businger found that Plaintiff was disabled, but only after his change in status on September 21, 2021. Id. Plaintiff was also advised of the restrictions on his receipt of disability payments during any period in which he was incarcerated. Tr. 36. Additionally, inasmuch as medical improvement was expected with appropriate treatment, ALJ Businger recommended a continuing disability review in 24 months. Id.

## V. Plaintiff's Claims

### ALJ Businger Failed to Properly Assess the Medical Opinions in Determining Whether Plaintiff Satisfied the Criteria of Listings 1.17, 1.18, 12.04 and 12.08

According to Plaintiff, ALJ Businger failed to consider the opinion of Dr. Girgis, who opined following her consultation examination of Plaintiff on July 15, 2015, that Plaintiff's gait was unsteady, unpredictable, and that Plaintiff required a cane or crutches for walking, and further required maximum assistance in getting on and off the examination table. Tr. 28; 782. Plaintiff goes on to challenge ALJ Businger's review of his medical records, ultimately

arguing that because ALJ Businger determined that Plaintiff needs a cane to ambulate (Tr. 29) he necessarily met the criteria of Listing 1.17 and 1.18. ECF 18 P. 3. Plaintiff believes that such a finding is further confirmed by Dr. Gomez's conclusion that Plaintiff was unable to walk 100 yards without assistance and used a wheelchair due to his right ankle pain. Id.; Tr. 32; 768. Likewise, Plaintiff points out that Dr. Hansen opined that Plaintiff "may" have met the criteria of Listing 1.18 as of June 2006. Tr. 32; 59-70.

Plaintiff similarly argues that while ALJ Businger extensively reviewed and cited to the opinions of Dr. Peterson, Dr. Heldman and Dr. Butler, and even found their opinions consistent with one another and the greater record, Tr. 32-33), ALJ Businger failed to recognize that Plaintiff's condition met the criteria for Listing 12.04 and 12.08. ECF 18, p. 3. According to Plaintiff, this was error.

**ALJ Businger Erred in Failing to Find that Plaintiff was Disabled as of May 7, 2015**

According to Plaintiff, there was evidence presented from Dr. Girgis that Plaintiff was disabled at or around the time of his application for benefits in May 2015. ECF 18, p.4. Specifically, Plaintiff contends that Dr. Girgis concluded during the exam of July 15, 2015, that Plaintiff "required a cane or crutches for walking to avoid falls." Id. Plaintiff suggests the ALJ failed to properly consider all of Plaintiff's qualifying disability, or combination of

Page 28 of 40

disabilities, in denying Plaintiff coverage as of May 7, 2015.

As a result, Plaintiff requests that this matter either be remanded for further proceedings to consider whether Plaintiff's chronic condition and mental health issues rendered him disabled, or overrule ALJ Businger's finding of disability of September 23, 2021, and instead find that the date of Plaintiff's initial filing on May 7, 2015, was the correct date.

## VI. Commissioner's Response

### Substantial Evidence Supports the Commissioner's Decision that Plaintiff did not Meet or Equal the Specific Criteria of Listings 1.17, 1.18, 12.04 and/or 12.08

The Commissioner contends that ALJ Businger properly considered whether Plaintiff's conditions met or equaled the criteria for Listings 1.17, 1.18, 12.04 and 12.08. ECF No. 20, pp. 6-18. At step three of the Commissioner's five-step sequential evaluation, the ALJ was required to consider whether any of Plaintiff's impairment, either individually or in combination, satisfied all of the medical criteria for the particular listings. The Commissioner contends that ALJ Businger properly decided medical equivalence, and was not required to articulate specific evidence supporting that conclusion. ECF 20, p. 7.

**1) Listing 1.17**

According to the Commissioner, in order to meet or equal the requirements of Listing 1.17 Plaintiff had the burden of showing:

> A. a history of reconstructive surgery or surgical arthrodesis of a major weight bearing joint.
>
> AND
>
> B. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months.
>
> AND
>
> C. a documented medical need (see 100C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i))

The Commissioner focuses on the lack of any finding that Plaintiff needed "bilateral" canes. ECF No. 20, p. 8. ALJ Businger included a finding that Plaintiff needed a "cane" to ambulate. Tr. 26. The Commissioner further argued that while Dr. Girgis noted that Plaintiff's gait was unsteady and unpredictable (Tr. 28; 782), and required a cane or crutches for walking to avoid falls (Id.), Plaintiff's medical records also confirmed that he "walks and moves easily" (Tr. 28; 779); that he had no tenderness or swelling of the right ankle (Tr. 28 781); that he demonstrated good strength, sensation, and reflexes in the lower extremities (though reduced range of motion in his right ankle) (Id.); and that he was only taking ibuprofen for treatment. Tr. 28, 779.

Additionally, Plaintiff was reported to have a steady or normal gait throughout his treatment. Tr. 29; 31; 971; 989; 992; 998; 1093; 1097; 1100; 1429-30; 1437; 1440; 1536; 1542.

**2) Listing 1.18**

Similarly, in order to meet or equal the criteria of Listing 1.18, Plaintiff would be required to demonstrate a major joint abnormality, which must be shown by:

> D. Impairment-related physical limitations of the musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
> 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
>
> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii); or
>
> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.18. The Commissioner argues that Plaintiff has not demonstrated the requisite criteria of Listing 1.18D because

there is no documented need for the use of a walker or other assistive device requiring the use of both hands; there is no limitation on Plaintiff using one of his hands to perform gross movements; and there was no evidence that he was unable to use both of his upper extremities to perform fine and gross movements. Tr. 11-12; 26; 193-94; 781. While the Commissioner recognizes that Dr. Hansen stated that Plaintiff may have met the requirements of Listing 1.18 in June 2006, ALJ Businger found that Dr. Hansen's opinion was not consistent with the record as a whole and was based on conjecture. Tr. 32. The Commissioner found that Dr. Hansen's opinion was only entitled to partial weight. Id.

**3) Listings 12.04 and 12.08**

With respect to Plaintiff's mental health impairments, the Commissioner argues that the ALJ properly considered whether Plaintiff's depressive, bipolar and related disorders (Listing 12.04) or his personality and impulse-control disorders (Listing 12.08) met or equaled the Paragraph B criteria. ECF No. 20, p. 14. With respect to these criteria, ALJ Businger concluded that Plaintiff did not have one "extreme" finding or two "marked" limitations in at least two of the areas of mental functioning. ALJ Businger concluded that Plaintiff had a moderate limitation in the areas of understanding, remembering, or applying information, and in interacting with

others; and only had mild limitations in concentrating, persisting, or maintaining pace, or in adapting or managing oneself. Tr. 25.

In reaching that conclusion, ALJ Businger detailed Plaintiff's activities of daily living. With respect to understanding, remembering, or applying information, ALJ Businger noted that Plaintiff did his own laundry; shopped; used public transportation; watched television; provided information about his health and work history; and followed instructions from his health care providers. Tr. 25; 684-86; 789. Moreover, there was no mention of any significant issues regarding Plaintiff's memory. Id.

Similarly, the Commissioner argues that ALJ Businger relied on those same activities of daily living – Plaintiff's shopping, use of public transportation, relationships with others including roomates; rapport at hearing and with providers – as a basis for concluding that Plaintiff was only moderately limited with respect to interacting with others. Tr. 25; 685; 788-89; 1092; 1195.

The Commissioner notes that ALJ Businger concluded that Plaintiff only had mild limitations with respect to concentrating, persisting, or maintaining pace. Tr. 25. Plaintiff was able to watch television, use the internet, and handle his own medical care. Id.; 138-39. ALJ Businger noted there was no significant mention of distractibility or inability to complete

testing relating to concentration or attention. Tr. 25; 789-90; 979.

ALJ Businger similarly found that Plaintiff only had a mild limitation with respect to managing himself. Tr. 25. Plaintiff was appropriately groomed; had good hygiene; had no problems getting along with others; and had a normal mood and affect and no problems with his temper control. Id. He was irritable and impatient, but he maintained eye contact and was able to establish rapport with examiners, and was well behaved during the hearing. Tr. 25; 798; 794-95; 797; 815-16; 822; 831; 842; 852; 941; 946; 979; 986.

The Commissioner contends that ALJ Businger properly afforded little weight to Dr. Peterson's opinion that Plaintiff had marked limitations in interacting with others and adapting and managing oneself. Tr. 32; 101-03. While ALJ Businger agreed that Plaintiff's violence and abusive behavior while drinking was an issue, he did not believe that such behavior created an extreme limitation or two marked limitations with respect to Plaintiff's mental functioning. Tr. 32.

With respect to Dr. Heldman and Dr. Butler, while both doctors determined that Plaintiff may have difficulty in maintaining ideal levels of concentration, accuracy, patience, dependability, and productivity, he could: recall, understand, and follow detailed and routine instructions and tasks; could sustain attention and concentration; maintain socially appropriate

behavior to work with others; and had adequate coping and problem solving skills for routine stressors and change. Tr. 32; 178-79; 226-27. The Commissioner contends that ALJ Businger properly concluded that these opinions were consistent with the greater record and supported the conclusion that Plaintiff had, at most, moderate limitations with respect to his mental health functioning. Tr. 32.

**ALJ Businger did not Err in Refusing to Reopen Plaintiff's Disability Claims**

The Commissioner argues that ALJ Businger properly reviewed the record and determined that the period from January 1, 1999, through February 15, 1999, was the only period prior to February 9, 2011, that was not previously adjudicated. The period from February 15, 1999, through July 7, 2003, was adjudicated by a final decision by ALJ John W. Belcher. Tr. 19; 156-63. The period from March 1, 2001, through February 9, 2011, was adjudicated by a final decision by Jesse J. Pease. Tr. 19; 234-42. No request to reopen a prior determination was made in any of the prior hearings. Tr. 49-92; 95-126; 131. The Commissioner contends there was no reason to reopen these prior determinations. ECF No. 20, pp. 19-20.

Moreover, even if it could be argued that ALJ Businger denied a request to reopen the prior claims, the Commissioner contends that this Court would not have jurisdiction to review the denial of a request to reopen

an administrative proceeding absent a colorable constitutional challenge. Tr. 20. As no constitutional claim was presented in this case, there is no reason for this Court to address such a request to reopen. There was no appeal of the prior decisions; thus, there is no basis to revisit them. Tr. 21.

## VII. Legal Analysis

### Substantial Evidence Supports ALJ Businger's Decision Regarding Whether Plaintiff's Conditions Met or Equaled the Criteria of any Listed Condition

In this case, substantial evidence and proper legal analysis supports ALJ Businger's decision that Plaintiff's conditions did not meet or equal the criteria of any listed condition. The question is not whether this Court would reach a different decision on the same evidence, or whether the evidence here actually preponderates a different result, but, rather, whether there is sufficient evidence here to confirm that substantial evidence supports ALJ Businger's decision. Phillips, 357 F.3d at 1240 n.8 ("[i]f the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it"); see also Viverette v. Comm'r of Soc. Sec., 13 F.4th 1309, 1314 (11th Cir. 2021). There is no doubt that ALJ Businger's decision is so supported. Even if this Court disagrees with ALJ Businger's resolution of the factual issues, and would resolve those disputed factual issues differently, ALJ Businger's decision must be affirmed where, as here,

it is supported by substantial evidence in the record as a whole. See Baker o/b/o Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The evidence in this case was sufficient to support ALJ Businger's conclusion that Plaintiff failed to establish that his conditions satisfied the criteria of each of the listings at issue. With respect to Listing 1.17, the evidence in this case does not confirm that Plaintiff was required to use bilateral canes or crutches to ambulate. At best, the evidence here demonstrated that Plaintiff required a single cane to move safely about. The failure to demonstrate that Plaintiff needed bilateral canes was sufficient to undermine any claim that Plaintiff met or equaled the requirements of Listing 1.17C. Moreover, much of Plaintiff's medical record confirmed that Plaintiff "walks and moves easily" (Tr. 28; 779); that he had no tenderness or swelling of the right ankle (Tr. 28 781); that he demonstrated good strength, sensation, and reflexes in the lower extremities; that he was only taking ibuprofen for treatment (Tr. 28, 779) and that he was reported to have a steady or normal gait throughout his treatment. Tr. 29; 31; 971; 989; 992; 998; 1093; 1097; 1100; 1429-30; 1437; 1440; 1536; 1542. The evidence suggests that Plaintiff did not need the cane consistently on a daily basis since it was taken from him while he was incarcerated, and he indicated he intended to use it again – suggesting that he had not been using it regularly.

Plaintiff has not demonstrated that his condition met or equaled the criteria of Listing 1.17; even if he had, the evidence here is at least in dispute. As a result, ALJ Businger's decision must still be affirmed as supported by substantial evidence.

The same is true with respect to Listing 1.18. There is no documented need for the use of a walker or other assistive device requiring the use of both hands; there is no limitation of Plaintiff using one of his hands to perform gross movements; and there was no evidence that he was unable to use both of his upper extremities to perform fine and gross movements. Tr. 11-12; 26; 193-94; 781. Plaintiff cannot demonstrate that his condition met or equaled the requirements of Listing 1.18D. Therefore, ALJ Businger's opinion in that regard must be affirmed.

With respect to Listings 12.04 and 12.08, ALJ Businger reviewed and considered Plaintiff's mental health records and determined that Plaintiff did not have one "extreme" or two "marked" limitations in the areas of mental functioning, finding instead that Plaintiff had two moderate and two mild limitations. Tr. 25. Plaintiff's mental health records largely reported normal mental state examinations throughout his incarceration during the period at issue and from Riverside Community Hospital (Tr. 819-71; 877-948; 1086; 1093; 1111; 1117; 1122; 1321; 1457; 1572; 1578; 1640). Moreover, his

activities of daily living supported ALJ Businger's findings. (Tr. 25, 684-86; 787-90; 794-97; 815-16; 822; 831; 842; 852; 941; 979; 986; 1092; 1195).

All of these factors support a finding that Plaintiff's symptoms are not disabling, and that his conditions were not so intense and chronic that work at all levels of activity would be precluded. As concluded by ALJ Businger, Plaintiff's alleged physical and mental symptoms and conditions were not of a disabling degree prior to September 23, 2021. Tr. 35.

**ALJ Businger Properly Limited his Review to The Unadjudicated Period and was not Required To Reopen Previously Adjudicated Periods**

As noted above, Plaintiff has been pursuing his claim for disability since at least June 14, 2000. Tr. 158. He originally sought DIB benefits with an onset date of March 1, 2001. He was awarded such benefits for the period from March 1, 2001 through March 1, 2002. Tr. 158-163. Plaintiff then filed a second application for SSI and DIB benefits on November 26, 2008, alleging an onset date of March 1, 2001. Tr. 234. That claim was denied, but his receipt of benefits from March 1, 2001-March 1, 2002 was confirmed. Tr. 235-242. Plaintiff did not appeal these prior administrative decisions. Plaintiff now apparently wants to revisit these prior periods and overturn the past denial. But there is simply no basis for such a reversal.

To the extent Plaintiff is seeking to establish his entitlement to SSI and DIB coverage beginning on May 7, 2015 (when Plaintiff filed his petition for coverage that is at issue in this case), that claim must also be rejected. First, Plaintiff's petition for DIB coverage necessarily fails because Plaintiff's claim for such coverage had to inure prior to June 30, 2006, his date last insured, and there is no evidence of any disability prior to that date other than the year between March 1, 2001 and March 1, 2002. Plaintiff's claim for SSI benefits similarly fails, as such a claim must have inured after the filing of his petition for SSI coverage (March 7, 2015), and there is no basis for a finding of disability from that date until Plaintiff reached the age of 50 on September 23, 2021. After that date, Plaintiff properly qualified for SSI benefits.

**VIII. Conclusion**

For the reasons stated above, considering the record as a whole, the findings of the ALJ are based upon substantial evidence and the ALJ correctly applied the law.

Accordingly, the undersigned concludes that:

1. The decision of the Commissioner that Plaintiff's application for period of disability and disability insurance benefits protectively filed on May 20, 2015, must be DENIED as Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act through June 30, 2006; and

2. Plaintiff's application for supplemental security income protectively filed on May 7, 2015, is DENIED, except that Plaintiff's claim for such benefits beginning on September 23, 2021, under section 1614 (a)(3)(A) is GRANTED.

Plaintiff's eligibility for such benefits may be subject to non-disability requirements for any such payments, including limits on the receipt of such benefits during any period in which Plaintiff may have been incarcerated, the need for a continuing disability review, and the need for the appointment of a representative payee if appropriate.

Although Plaintiff has not filed a change of address, review of the Bureau of Prisons inmate locater confirms that Plaintiff is now located at Phoenix RRM (Residential Reentry Management facility). The Clerk shall mail a copy of this Order to Plaintiff at this address:

PHOENIX RRM
230 N FIRST AVE, SUITE 405
PHOENIX, AZ 85003

The Clerk is directed to enter judgment as described above and close the file.

**DONE AND ORDERED** on August 31, 2026.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**